Kennedy, J,
Action to set aside a deed of certain lands in the city of Utica, executed by one Sarah Scott to Joseph Archer and Eliza Pittam, bearing date, on the 31st day of May, 1882, on the ground that the same was procured by the grantees through fraud and undue influence exercised on the grantor, as well, also, that the grantor was at the time incompetent.
The grantor, Sarah Scott, was the mother of the plaintiffs and the defendants, Joseph Archer and Eliza Pittam; the remaining defendants are her grandchildren—children of her deceased children.
Sarah Scott died on the 13th of March, 1885, at the advanced age of ninety-six. For a number of years prior to 1882, she had been the owner and in possession of a house and lot in the city of Utica of the value of at least $1,500.
The property she acquired from her deceased husband, and father of her children, by devise from him.
On the 31st day of May, 1882, she then bemg such owner, executed a deed in form conveying said house and lot to the defendants, Joseph Archer and Eliza Pittam, for the consideration therein expressed of $1 and containing, in addition thereto, covenants by the grantées to support the *478 grantor during her life, and within one year after her death to pay to certain of her other children and grandchildren difterent sums of money varying from fifty to one dollar, in all amounting to about $200. The lands conveyed comprise all the real estate owned by the grantor, and substantially all of her estate. For many years prior to the making of the deed, the grantor had. been in feeble health, subject to fainting fits; her memory was greatly impaired, so much so that she retained no recollection of passing events; she was unable to recognize her children and grandchildren or her acquaintances, with whom she was brought in frequent contact; her conversation was incoherent and disconnected, and while she had some intelligence and could appreciate simple things which might transpire in her presence, she was in that condition of physical and mental weakness which made her yield a ready and willing submission to the suggestions and requests of those with whom she was immediately associated. It appears also that she was very deaf, ignorant and illiterate.
About the year 1877 she went to Eve with the defendant EEza Pittam, and became a member of her family, where she remained until her death, she paying for her board and care $2.50 per week from certain rents derived by her for the house and lot in question and some other real estate of which she held a life lease.
The plaintiffs, Mary Ann Boff and Mary Jane Peck,- as weH, also, defendants EEza Molden, Joseph Kirkby, John H. Boff, Clarance Boff and Frank Peck, her grandchildren, Eved in Utica, at the time of the conveyance, but had no knowledge or information that the same was contemplated or about to be made.
Joseph Archer, one of the grantees, Eved in Iowa. He came to Utica at the request of his associate grantee, Mrs. Pittam, for the purpose, as avowed by him, of settling his mother’s matters. He had not seen her for several years prior to that time. On his arrival he was domiciled at the house of Mrs. Pittam, where the deceased was, and remained there until the day after the deed was executed, when he returned to Iowa, declaring that he had succeeded in settling his mother’s business. Attempt was made by Mrs. Pittam to conceal the fact that the deed had been given and placed on record. Many other facts and circumstances were given bearing more or less directly upon the question at issue.
Having, in view of the great age of the grantor, her feeble physical and mental condition, her inabihty to understand or appreciate passing events, her susceptibihty to influence of those in whose care she was, or with whom she was brought in connection, to which may be added the. *479 fact that she was under the immediate control of Mrs. Pit-tam, one of the grantees, and necessarily looked to her for care and maintenance and the consequent relation of confidence existing between them. I think it is incumbent on the defendants, the grantees, to show affirmatively, that the deed was fairly and understandingly made, and that it expressed and carried out the true intent and purpose of the grantor. That she understood the relation she bore to each of her children, their demands upon her bounty, and the manner, she, in truth, desired them to be discharged.
The person who drew the deed, Frederick W. Klages, testifies to what he remembers took place at the time it was drawn, and to the directions received by him from Mrs. Scott as to her wishes in that regard, and if full credit is given to his testimony, it is quite apparent that Mrs. Scott bore her burden of her near an hundred years with ease and without their usually attending infirmities, and instead of being debilitated in body and in mind, that she was strong and vigorous in intellect, fully appreciating the business in which she was engaged, and competent to thoroughly understand the effect of it. From the same witness, it also appears, or at least he so testifies, that neither Joseph Archer, who had traveled from a distant state to see to it that his mother’s business matters were properly settled, nor Eliza Pittam, in whose care she was, were present at that time, or took any interest in what was being done by this aged woman. When the witness met her she was a stranger to him; he found her with her papers ready, and she at once presented him a deed containing a description of the premises to be conveyed, although she could not read, and informed him of the purpose for which he had been sent, and gave him a detailed statement, by way of instructions, of how she desired it to be done.
Aside from the improbability of the accuracy of this evidence, the witness is contradicted by several others, who testify that very soon after the deed was executed, Klages stated that both Joseph Archer and Mrs. Pittam were present at the time the deed was drawn by him and executed by deceased.
In the light of the circumstances and in view of the undisputed, necessarily feeble condition of the grantor, the conclusion to me is irresistible that the witness must be mistaken, unintentionally, perhaps, as to what occurred at the time he drew the deed and deceased executed it.
She was very deaf, and any conversation he had with her must have been made known to those in the house. She was illiterate, unable to read or write, and was an easy subject for improper influence or for deceit. And the circumstances surrounding the transaction; the situation of *480 the parties; the relation of the grantees to the deceased; her condition of ignorance and great mental debility; the fact she had never suggested, so far as the evidence shows, her desire to make the disposition of her property, which she did, or indeed any ante-mortem disposition of it, when grouped, lead to the conclusion that the deed in question was not the deed of the deceased, but rather of the grantees benefited by its execution. By reason of the relation ex isting between the grantor and her daughter Eliza Pittam, the burden of proof is upon her, as one of the grantees in the deed, to show that the same was the uninfluenced act of the former. In Nesbit v. Lockman (34 N. Y., 168), the court say: “It is certain that the law regards a transaction like the one in question with great suspicion; that when persons standing in a confidential relation make bargains with or receive benefits from the person for whom they are counsel, attorney, agent or trustee, or when the relation of parent and child, or guardian and ward exists, may be added, the transaction is scrutinized with the extreme vigilance and regarded with the utmost jealousy, the clearest evidence is required that there is no fraud, -undue influence or mistake; that the transaction was perfectly understood by the weaker party. The presumption is against the propriety of the transaction, and the onus of estabhshing the gift or bargain to have been fair, voluntary and well understood, rests upon the party claiming; and this in addition to the evidence to be drawn from the execution of the instrument conveying the property. In Sears v. Shafer (6 N. Y., 268) the rule is thus stated :
“A court of equity interposes its benign jurisdiction to set aside instruments executed between persons standing in the relation of parent and child, guardian and ward, physician and patient, solicitor and client, and in various other relations in which one party is so situated as to exercise a controlling influence over the will, conduct and intent of another. In some cases undue influence will be inferred from the nature of the transaction alone, in others, from the nature of the transaction and the exercise of occasional or habitual influence.
It is unnecessary to refer to the many cases found in the books holding these principles and enunciating similar views.
If it should be assumed that the witness Klages is correct in the evidence he gives, and that the transaction of giving the deed was solely between him and the deceased, and that she gave him the minute instructions which he states, still, the conclusion would be just that they had been previously prepared for her by the parties interested and who were seeking benefits. . ,
*481 It is said, in Tyler v. Gardiner (35 N. Y., 595): “ It is no sufficient answer to the presumption of undue influence which results from the undisputed facts that the testatrix was aware of the contents of the instrument and assented to-all its provisions. This was the precise purpose which the undue influence was employed to accomplish.”
I cannot believe that a person at the advanced age of the grantor, in the debilitated condition she is shown to have been, could deliberate and act, and unaided conclude, as Klages makes her do; no reason is shown why she should prefer her son Joseph, whom she had not seen for several years, or her daughter Eliza, over her other children in the disposition of her little estate; the latter had no unusual claim upon her mother. It is true she had been in her family and been taken care of by her; but. for this the daughter has received compensation in full, and as such care and services were rendered.
My conclusion is that the deed was procured through undue influence exercised by the grantees over the grantor, and for this reason the same is void and should be set aside, with costs.
The plaintiff’s counsel will prepare findings in accordance with the above. _